SMITH
vs.
MAHAN &c.

</div>

---

## Miller and wife vs. McClelland.

Error to the Bourbon circuit; GEORGE SHANNON, Judge.

*Slaves.    Partus sequitur ventrem.    Devises.    Construc-
tion.*

Judge MILLS, delivered the Opinion of the Court.
        Wм. McClelland, by his will, devised
all his slaves, except one, to his wife during her life
and the lives of two sons, Alexander and Elijah,
who lived with her, among which was a young fe-
male slave named Milly.

To his son Elisha, after the death of his wife and
two sons, whose lives were also to end the particu-
lar estate, he devised thus:

"At the death of Martha his, [Elisha's] mother,
and Alexander and Elijah, Elisha is to have all the
land and slaves that is bequeathed to the said Martha
McClelland, *except one slave named Milly.*"

The next we hear of Milly in the will, he be-
queaths her thus:

"I give and bequeath to my daughter Patty Orr
McClelland, daughter of James McClelland, at the
death of her grandmother McClelland, a feather bed
and bedding, horse and bridle, with the slave nam-
ed Milly that is within excepted; and if she should
die without an heir, the slave Milly is to go to Eli-
sha, and the other property likewise."

The testator died in 1812, and his wife survived
till 1826.    Before her death the sons Alexander and

<div style="text-align:right">

DETINUE.

Case 41.

May 3.

Wm. McClel-
land's will.

Facts stated.

</div>

MILLER &ux. *vs.* M'CLELAND.

Elijah died, as well as the slave Milly. But after the death of the testator and before the death of Milly, she had four children, three of which are now the subject of controversy. On the death of the widow of the testator, Elisha succeeded to the possession of her estate, and among the rest to these four young slaves, the children of Milly. Patsey Orr McClelland, who had in the mean time intermarried with Joseph Miller, with her husband brought this action of detinue, claiming these four slaves, the children of Milly, as following the devise over of the mother. Elisha claims them as being the remainder man after the death of his mother.

Decision of the circuit judge.

The court below decided in favor of Elisha; and Miller and wife have prosecuted this writ of error.

Question stated.

From this statement of the case, it will be seen that the question is involved, to whom does the increase of slaves during a life estate pass—do they belong to the estate of the tenant for life, or go to the remainder man?

Children of a female slave, born in the time of an estate for life, go with her at the termination of the particular estate, to the remainder man, and not to the tenant for life.

This question came before this court in the case of Murphy vs. Riggs, I. Marsh. 532, and it was then held, that such offspring passed with the devise over to the remainder man. It is true that express adjudications on this point, both in Virginia and this country, are rare; but it seems to be a historical fact, that from an early period of Virginia, that state adopted the maxim, *partus sequitur ventrem*, with regard to such offspring; and it probably arose out of the decisions of her colonial courts, of which we have no report, and it became so firmly established as a rule of property, that none now question it in her courts. Whatever might be our opinions, was the question new, we would not lightly shake a rule so long acquiesced in, and especially after it has several years since been sanctioned by this court. Although the decision is solitary in this country, yet it has remained unshaken for years, and as it is one which directly touches and settles the title to property held valuable, and often changing owners, it must have been the rule since adopted in determining the ownership of many slaves. By it therefore the question must be considered at rest.

But is contended here that the will shews a different intention; that Elisha McClelland is made by the will the remainder man; that the will shews an intention to pass the estate contrary to the general rule, because by the will, all is given to Elisha at his mother's death, "Milly excepted," and of course her offspring was not excepted.

If this rule of interpretation is adopted, that when Milly is excepted her offspring is not, it would seem to follow that when she was given to the mother, and her offspring not mentioned, her after born children did not pass, which would defeat the title of Elisha, and leave the offspring of Milly not disposed of by the will, which cannot be presumed.

The right way to ascertain the meaning of the testator, when he excepts. Milly in one clause, and grants her in another, is to place ourselves back in point of time, and in his situation when he spoke. Then, Milly alone existed, and was in the mind of the testator, and of course she alone was granted or excepted. If she increased in the mean time, which might be expected, such offspring was left to pass as she passed, or to be excepted when she was excepted, as by the rule *partus sequitur ventrem* her offspring would be included with her. Then the testator left none of her offspring undisposed of, and his intention would be effectuated. It was therefore necessary for the testator to shew that he intended to dispose of the offspring of Milly different from herself, by some expressions more unequivocal than those relied on, before we can say it was his intention to depart from the general rule The decision of the court below is therefore erroneous.

Judgment reversed with costs, and verdict set aside, and cause remanded for new proceedings not inconsistent with this opinion.

*T. Marshall* and *Depew*, for plaintiffs; *Crittenden* and *Talbot*, for defendants.

2 E

---

MILLER &c.
vs.
M'CLELAND.

Devise of all testator's slaves for life with remainder of all except Milly to Elisha, and then a devise of Milly to P. entitles P. to the children born of Milly during the particular estate.